+**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

KELLY STOETZEL and LEE STOETZEL,

          Plaintiffs,

   v.

NEW JERSEY TURNPIKE AUTHORITY,

          Defendant.

Civil Action No. 12-01947(FLW)

**OPINION**

**WOLFSON, United States District Judge:**

    Defendant, New Jersey Turnpike Authority ("Authority" or "Defendant"), moves for summary judgment on Plaintiffs', Kelly Stoetzel and Lee Stoetzel ("Plaintiffs"), claims for negligence and loss of consortium, respectively, which stem from Ms. Stoetzel's slip and fall in an allegedly icy rest area parking lot operated and owned Defendant. Defendant contends that it is immune from liability by virtue of common-law snow removal immunity and by the weather-related immunity codified at N.J.S.A. 59:4-7. For the reasons set forth below, Defendant's Motion for Summary Judgment is granted.

**BACKGROUND**

    The following facts are drawn mostly from the parties' undisputed statements of material facts. At approximately 7:30 A.M. on January 5, 2011, Plaintiffs stopped at the Woodrow Wilson Rest Area to get a cup of coffee. (NJTA's Statement of Undisputed Material Facts ("Defendant's Statement"), ¶¶ 2-3). The Woodrow Wilson Rest Area is owned by the Authority, which is responsible for maintenance of the New Jersey Turnpike and the Garden State Parkway.

1

*Id.* at ¶ 7 The Authority licensed the use of the facilities at this rest area to HMS Host ("HMS"). However, the Authority explicitly retained responsibility for snow removal in the parking lot area.[1] *Id.* As Ms. Stoetzel walked through the parking lot, she slipped and fell on ice formed by the melting and refreezing of snow the Authority had plowed and piled. *Id.* at ¶ 5. As a result of the fall, Ms. Stoetzel allegedly suffered ankle injuries which required hospitalization and surgery. (Deposition of Kelly Stoetzel ("Stoetzel Depo."), 65:15 – 69:24. The fall did not occur on the blacktop, but on one of the concrete islands located in the parking lot. *Id.* at ¶ 6.

On March 30, 2012, Plaintiff Kelly Stoetzel filed a complaint for negligence against the Authority. She alleged that Defendant owed to her, as an invitee and customer of the rest stop, a duty of care, and that Defendant breached this duty of care by failing to properly maintain the parking area of the rest area and allowing ice to accumulate on the walking surface. (*See* Complaint). In addition, Plaintiff Lee Stoetzel, Ms. Stoetzel's husband, filed a loss of consortium claim. *Id.* Defendant moved for summary judgment on the ground that it is immune from liability by virtue of common-law snow removal immunity and the weather-immunity provision of the Tort Claims Act, 59:4-7.

## STANDARD OF REVIEW

Courts will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). A fact is "material" if, under the governing

---

[1] As discussed *infra*, pursuant to the lease between the Authority and HMS, the parking lot area upon which Ms. Stoetzel slipped was not leased to HMS.

substantive law, a dispute about the fact might affect the outcome of the suit. *See id.* at 252. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts "in the light most favorable to the [non-moving] party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party then carries the burden to "designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324. Moreover, the non-moving party may not rest upon the mere allegations or denials of its pleading. *Id.* at 324; *Maidenbaum v. Bally's Park Place, Inc.*, 870 F. Supp. 1254, 1258 (D.N.J.1994). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. A mere "scintilla of evidence ... will be insufficient." *Anderson*, 477 U.S. at 252.

## DISCUSSION

Common law snow removal immunity was first recognized in *Miehl v. Darpino*, 53 N.J. 49 (1968). There, the court noted that, in the absence of immunity, the only way a municipality could avoid liability for accidents related to inadequate snow removal would be to "broom sweep all the traveled portion of the streets, driveways and sidewalks where natural snowfall has been disturbed by any removal of street snow." *Id.* at 53-54. Such an undertaking "could make the expense of any extensive program of snow removal prohibitive and could result in no program or in an adequate partial program. Patently, some cleaning of snow is better than none." *Id.* at 54. According to the court,

> The unusual traveling conditions following a snowfall are obvious to the public. Individuals can and should proceed to ambulate on a restricted basis, and if travel is necessary, accept the risks inherent at such a time. To require the individual members of the public to assume the relatively mild additional danger presented

3

> by accumulated piles of snow resulting from street snow removal is a minor sacrifice to exact when the alternative could be municipal failure to eliminate the far greater danger caused by permitting snow to remain as deposited by natural forces. The public benefit arising from snow removal far outweighs any slight, private detriment which could accompany such a municipal act.

*Id.*

A later New Jersey Supreme Court case further elaborated on the reasons for the continued existence of common-law snow removal immunity, noting that snow-removal activities, by their very nature, leave behind "dangerous conditions," and that it could not imagine any other "governmental function that would expose public entities to more litigation if this immunity were to be abrogated." *Rochinsky v. New Jersey Dept. of Transp.*, 110 N.J. 399, 413-14 (1988).

Subsequent to *Miehl*, a form of weather-related immunity was codified in New Jersey's Tort Claims Act. N.J.S.A. 59:4-7. This section provides:

> Neither a public entity nor a public employee is liable for an injury caused solely by the effect on the use of streets and highways of weather conditions.

N.J.S.A. 59:4-7.

However, this provision of the Tort Claims Act did not abrogate the common law immunity recognized in *Miehl*. *Rochinsky* 110 N.J. 399. Thus, "there are two possible roads to snow-removal immunity; one is the Tort Claims Act and the other is the common law." *Sykes v. Rutgers, State University of New Jersey*, 308 N.J. Super. 265, 267 (App. Div 1998).

Here, it is abundantly clear that Defendant falls squarely within the common-law snow removal immunity carved out by *Miehl*.[2] Ms. Stoetzel slipped and fell on a patch of ice in an

---

[2] Because of this, I need not address the statutory immunity argument. The dispositive issue in an analysis of N.J.S.A. 59:4-7 here would be whether the parking lot constitutes a "street" or "highway." However, New Jersey courts have generally declined to fully define the contours of the statutory language, and prefer to avoid the question when the defendant is clearly entitled to common law immunity. *See Sykes*, 308 N.J. Super. at 268 ("We need not grapple with [the issue of whether a Rutgers' dormitory parking lot qualified as a street or highway] because we have

4

area for which the Authority was responsible for snow removal. There is nothing in the record indicating that anything done by Defendant increased the danger to Ms. Stoetzel. This kind of occurrence is precisely what the *Miehl* court intended to immunize.

Plaintiffs, however, seek to avoid summary judgment by relying on an exception to common-law snow removal recognized in *Bligen v. Jersey City Housing Authority*, 131 N.J. 124 (1993), in which the court found that the housing authority was not immune from liability in a suit brought by a plaintiff who had slipped and fallen on ice in the driveway outside of her apartment building. Plaintiffs here also claim that the condition which caused Ms. Stoetzel's injuries was artificially created by Defendant, thus creating a duty for Defendant to warn about the condition, and that its failure to warn was "palpably unreasonable," allowing Plaintiffs to maintain a cause of action notwithstanding immunity. Furthermore, Plaintiffs contend that because Defendant maintains a "black pavement policy" by which it aspires to keep "roadways, ramps, parking, lots, [and] that type of thing" for which it is responsible "clear and free of snow," its failure to do so was palpably unreasonable. (Deposition of Robert Matthews ("Matthews Deposition"), 39:19 – 40:10). However, stripping Defendant of immunity for any of these reasons would eviscerate nearly 40 years of immunity jurisprudence. I will examine each argument in turn.

### A. *Bligen* Exception

In *Bligen*, a resident of public housing sued the city housing authority for negligent snow removal after she slipped and fell on ice which had accumulated on the driveway outside of her

---

concluded that regardless of Rutgers' entitlement to Tort Claims Act immunity, it is clearly entitled to the common law immunity[.]"); *Bligen v. Jersey City Housing Authority*, 131 N.J. 124 at 130 (1993) (noting that its "conclusion that the internal driveway servicing the defendant's apartment complex is not a 'street' or 'highway' does not resolve whether other roadways servicing public facilities are the essential equivalent of public streets covered by the immunity.").

apartment building. *Bligen*, 131 N.J. 124. Defendant moved for summary judgment on the ground that it was immune from suit under N.J.S.A. 59:4-7 and the common-law. The Law Division found that defendant was not entitled to statutory immunity under N.J.S.A. 59:4-7, but was entitled to common-law immunity. *Id.* at 127. The Appellate Division agreed that N.J.S.A. 59:4-7 did not apply, but reversed the Law Division's decision to grant common-law immunity. *Id.* In so doing, the Appellate Division "found that the common-law immunity for snow-removal activities did not extend to public housing authorities," and that "[t]he common law imposed the same duty on public housing authorities as it did on private property owners, namely, '[t]he obligation to exercise reasonable care in making the premises safe for its occupants.'" *Id.* (quoting *Bligen v. Jersey City Housing Authority*, 249 N.J. Super. 440, 443 (App. Div. 1991)).

On review, the New Jersey Supreme Court affirmed the Appellate Division's ruling for three main reasons. First, it found that the accident did not take place on a highway or a municipally owned road. *Id.* at 133. Second, "unlike a municipality," which is "forced to determine which parts of the city warrant immediate attention … Defendant controlled a finite, bounded area [and] did not have to determine which street among thousands would have to be cleaned first." *Id.* at 134. Third, the court explained that there is nothing "novel" about "imposing liability on a housing authority that failed to use due care to safeguard its premises," *id.*, and it found "no reason to treat public landlords differently from other commercial landlords."[3] *Id.* at 136.

Significantly, however, the *Bligen* court emphasized "the narrow scope of [its] holding," and that it was satisfied that its holding would not measurably increase public municipalities'

---

[3] The "novel" language comes from the drafters of the Tort Claims Act, who cautioned courts against accepting "novel causes of action." *Bligen*, 131 N.J. at 134 (citing Comment, N.J.S.A. 59:2-1). While this language specifically relates to the Tort Claims Act, the *Bligen* court used it as part of the discussion about common-law immunity. *Id.* at 134-36.

liability for negligent snow removal. *Id.* at 139. The court also implicitly reaffirmed the existence of common-law snow removal immunity for the Turnpike Authority, writing that:

> The common law consistently recognized immunity for injuries caused by the snow-removal activities of most public entities. But that immunity was based primarily on the limitless liability that could be imposed on an entity, such as a state, county, municipality, or *turnpike authority* that had the responsibility to clean up numerous streets and roads.

*Id.* at 131 (emphasis added).

Nonetheless, Plaintiffs rely on *Bligen* in opposing Defendant's motion, arguing that because Ms. Stoetzel's slip and fall did not occur on a highway or municipally owned road, the area was finite and bounded, and Defendant should be treated as a landlord, the Court should deny Defendant's motion. Before I discuss the applicability of these arguments to the facts here, I note the similarity of the facts to those in *Lathers v. Township of West Windsor*, 308 N.J. Super. 301 (App. Div. 1998). In *Lathers*, plaintiff brought suit against the Township for his fall caused by ice on a sidewalk leading from the Township's building complex to a parking lot. *Id.* at 303. This ice was the result of the melting and refreezing of snow which had been removed and piled adjacent to the sidewalk. *Id.* Plaintiff alleged that defendant was "negligent in not preventing melting snow from running onto the adjacent sidewalk and refreezing, or removing it once it accumulated there." *Id.* at 304. The court found that this activity was precisely the type that the *Miehl* court intended to immunize. Plaintiff argued, however, that because there, as in *Bligen*, the accident occurred on a sidewalk, and that defendant had a "finite area" from which to remove snow, the *Bligen* exception should apply. *Id.* The court rejected these arguments, finding that the *Bligen* court was simply following "the long tradition in common law of holding municipal landlords responsible for the reasonably-foreseeable consequences of their actions." *Id.* at 306. It concluded that there was no such guiding tradition on the facts of the case, and affirmed the

7

lower court's grant of defendant's motion for summary judgment. *Id.* Here, it similarly does not appear that any long-standing tradition guides this Court toward finding an exception to *Miehl*-immunity on these facts.

Turning now to Plaintiffs' specific arguments, while it is true that the accident here did not occur on a highway or municipally owned road, this is not dispositive. More important than the technical term for the surface upon which an accident occurred is the nature of that surface, and who is responsible for removing snow on that surface. Of particular relevance is the Appellate Division's decision in *Sykes v. Rutgers, State University of New Jersey*, 308 N.J. Super. 265 (App. Div. 1998). There, plaintiff was a student at Rutgers and lived in a dormitory on its New Brunswick campus. While walking back to her dormitory, plaintiff slipped and fell on an accumulation of ice in the parking lot and brought suit against Rutgers for negligence, alleging that Rutgers had "failed to protect against the [icy] condition by failing to properly inspect, repair, supervise, control, and remedy or warn of the same." *Id.* at 266-67. Rutgers moved for summary judgment, arguing that it was shielded from liability by N.J.S.A. 59:4-7 and common-law immunity. Plaintiff argued that neither immunity applied, because the accident occurred in a parking lot, and that the parking lot constituted only a "finite, bounded area" from which to remove snow. *Id.* at 267. The trial court denied summary judgment, finding the case virtually indistinguishable from *Bligen*. The Appellate Division reversed, finding no support in *Bligen* for the notion that *Bligen*'s "finite, bounded area" characterization of the housing authority's seven-acre area of responsibility could be used to fractionalize a 1500 acre college campus. *Id.* at 268-69. The court also wrote that plaintiff's "argument that the scope and size of Rutgers' Busch Campus can be ignored by focusing only on the part of the campus 'dedicated to student housing' would enable slip and fall plaintiffs to effectively dissect any public entity into

8

its constituent, 'finite, bounded areas' for purposes of avoiding common law snow-removal immunity. This would, in effect, destroy the common law immunity[.]" *Id.* at 269.

Other cases have found similarly. In *O'Connell v. New Jersey Sports and Exposition Authority*, the Appellate Division affirmed the lower court's grant of defendant NJSEA's motion for summary judgment where plaintiff had brought suit after he slipped and fell in the stands during a New York Giants football game. 337 N.J. Super. 122 (App. Div. 2001). The court rejected "plaintiff's contention that *Bligen* should be extended beyond its unique facts," and found that though the stadium in which plaintiff slipped may be considered a "finite area," the entire area for which defendant was responsibility was significantly larger, and included multiple other stadiums and complexes. *Id.* at 133. In a similar vein, *Chambers v. Township of Howell*, the Appellate Division affirmed the lower court's grant of both defendants' – Township of Howell and the Howell Township Board of Education – motion for summary judgment on immunity grounds. 2007 WL 2005032 (Sup. Ct. N.J. App. Div., July 12, 2007). There, plaintiff had slipped and fallen in a parking lot owned by the Township and leased to the Board, and brought suit for negligence. In granting the defendants' motion, the court refused to parse out the parking areas for which the Board was responsible, noting that it encompassed thirteen schools and an administrative building. *Id.* at *3. Finally, in *Siegel v. County of Monmouth*, the Appellate Division refused to extend the *Bligen* exception to cover the slip and fall of a plaintiff in an icy parking lot owned by defendant, finding that it could not dissect the parking facility from the overall responsibility of defendant to remove snow on an "extensive network of public streets and roads, as well as parking lots it maintains throughout its jurisdiction." 2007 WL 1628141, *7 (Sup. Ct. N.J. App. Div., June 7, 2007).

9

The reasoning of the above cases is directly applicable here. Significantly, these cases demonstrate that a public entity may still claim the benefit of common-law snow removal immunity even if an accident occurs in a parking lot rather than on a street or highway. Furthermore, Plaintiffs' argument that the Woodrow Wilson parking lot is a discrete and finite, bounded area that is excepted from immunity is belied by these cases. The Authority is responsible for maintenance of the New Jersey Turnpike and Garden State Parkway – an area of responsibility which is without a doubt significantly larger than the area for which the defendants in *Sykes*, *Siegel*, *Chambers*, and *O'Connell* were responsible. Indeed, if this Court were to allow Plaintiff to separate the Woodrow Wilson parking lot from the total area for which Defendant is responsible, it would do violence to established precedent and allow the *Bligen* exception, which was intended to be narrow, to swallow the rule.

Plaintiffs also rely on *Bligen* for their argument that Defendant should be held liable as a landlord because Defendant leased the Woodrow Wilson facilities to HMS, but retained responsibility for snow and ice removal in the parking lot. In *Bligen*, the court reasoned that because courts have historically held public and private landlords to the same duty to maintain the premises to prevent foreseeable injuries, and that this duty has extended to snow and ice removal, a public housing authority was not immune from suit even though the suit was related to snow and ice removal and the public housing authority is a public entity. Plaintiffs also rely on *Tymczyszyn v. Columbus Gardens, Hoboken Hous. Auth.*, 422 N.J. Super. 253 (N.J. Super. Ct. App. Div. 2011), in which the court reiterated the holding in *Bligen*, finding that a housing authority was not immune from a suit brought by a plaintiff who had slipped on ice on a sidewalk abutting defendant's property. *Id.* at 263. The court wrote that "[g]iven the well-established duty owed by commercial landlords to pedestrians to keep the sidewalk abutting their

10

property free of snow and ice, we hold defendant cannot escape liability here under the common law immunity for snow removal activities." *Id.* at 263.

However, Plaintiffs ignore other cases, more factually apposite, which yield a contrary result. In addition to the already discussed *Lathers* case, *Rossi v. Borough of Haddonfield* lends support to Defendant's claim of immunity. 297 N.J. Super. 494 (App. Div. 1997), *aff'd* 152 N.J. 43 (1997). In *Rossi*, plaintiff alleged that the Borough had negligently maintained a municipal parking lot by failing to remove ice. Among other arguments made by plaintiff, she "attempted to classify the borough as a 'landlord' by virtue of the sale of parking permits." *Id.* at 501. In response to that argument, the Appellate Division wrote that "[t]here is … no landlord-tenant relationship created by the Borough regulating parking through meters and permits. Plaintiff gained no property right as a consequence of the purchase of a parking permit. Plaintiff … need not receive any greater protection against weather and its consequences simply because she procured the right to park in a designated area." *Id.*

The court in *Sykes* also considered and rejected a landlord-tenant argument. The court found that "[c]lassifying Rutgers as a 'landlord' in order to come within the *Bligen* rationale ignores its role as a State University which primarily uses its campuses for scholastic activities and not housing." 308 N.J. Super. at 269. The court thus rejected this classification, and noted that New Jersey "courts have previously rejected attempts by slip and fall plaintiffs to classify a particular public entity as akin to a commercial landlord to squeeze within the *Bligen* rationale." *Id.*

As the above cases indicate, while Defendant was deriving revenue from the rest-stop facilities, that does not transform it into a landlord owing a duty to all those who use any of its revenue-generating properties – particularly when, as here, the accident did not occur in the

11

leased facility, but in the parking lot not leased to HMS. Analogizing the facts here to the language in *Sykes*, classifying the Authority as a landlord in order to come within the *Bligen* rationale ignores the Authority's role as a public entity responsible for the maintenance and safety of hundreds of miles of roads and surfaces in New Jersey.

Plaintiffs also ask this Court to deny immunity to Defendant because Defendant could have made HMS responsible for snow removal in the parking lots servicing the rest area, in which case Plaintiffs may have been able to maintain a cause of action against HMS. Plaintiffs argue that this was intentionally done because Defendant knew it would have snow removal immunity and HMS would not. Whatever Defendant's speculative motivation might have been, it does not change the result based upon the actual facts. Importantly, Defendant did not lease the parking lot area to HMS. The lease explicitly licenses to HMS the "exclusive possession, control … and use of" the Restaurants, which was defined to include "buildings, restaurants, snack bars, portions of buildings, equipment … public lobbies or lounges, public toilet rooms, business center facilities, and gift retail shops." (Declaration of Thomas P. Donnelly, Ex. D, p. 3). Furthermore, as Plaintiffs acknowledge, the lease between Defendant and HMS allocates the areas of responsibility for which Defendant and HMS would have snow removal responsibilities in a way consistent with the limits of the lease, with HMS assuming responsibility for the sidewalks immediately surrounding the building, and the Authority retaining responsibility for the parking areas. *Id.*, p. 59.

In light of the above, I find that the *Bligen* exception does not apply to the facts here, and Defendants are entitled to common-law snow removal immunity.

**B. Palpably Unreasonable Conduct and Duty to Warn**

Plaintiffs also argue that Defendant's failure to warn about the condition was palpably unreasonable. Specifically, Plaintiff alleges that Defendant had created a large pile of ice, which subsequently melted and refroze, creating a hazardous condition about which Defendant had a duty to warn. In support of their argument, Plaintiffs cite to *Rochinsky*, which found that there may be situations where a public entity has a duty to warn under N.J.S.A. 59:4-4[4] because that "public entity's snow removal activities … result in hazardous conditions different in character from the dangers ordinarily expected from a snow storm" and that "[s]uch a failure to warn would necessarily involve palpably unreasonable conduct by a public entity … that was separate and distinct from its snow-removal function." 110 N.J. at 416. The court also wrote that the duty to warn addressed by N.J.S.A. 59:4-4, "applied in the context of a snowstorm, concerns only extraordinary conditions that are qualitatively different from those conditions that would be "reasonably apparent to" or "anticipated by" a careful motorist driving in a snowstorm. *Id.* In other words, there may be conduct so egregious and unreasonable that, while it involves snow removal, it gives rise to a cause of action that may be maintained despite common-law snow removal immunity.

However, the examples given in *Rochinsky* of egregious conduct clearly demonstrate why the conduct about which Plaintiffs complain falls far short of this standard. *Rochinsky* hypothesized that such egregious conduct may include situations where a defendant leaves a stalled vehicle used for snow plowing in the path of highway traffic, or creates a snow bank that makes a highway impassable. *Id. Rochinsky* itself dealt with whether immunity applied where

---

[4] This section provides: "… [A] public entity shall be liable for injury proximately caused by its failure to provide emergency signals, signs, markings or other devices if such devices were necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care."

plaintiffs brought suit against the New Jersey Department of Transportation for injuries caused when an artificially created snow bank had ended plaintiffs' lane of traffic without any warning, causing plaintiffs to have an accident in which their vehicle overturned. *Id.* Even there, the court did not decide whether this conduct was sufficiently "palpably unreasonable" to maintain a cause of action for failure to warn under N.J.S.A. 59:4-4, but allowed plaintiffs to amend their complaint to plead such a claim. *Id.* at 417.

I note that Plaintiff has not specifically pled a claim under N.J.S.A. 59:4-4. However, even if a broad reading of the complaint finds that such a claim may have been intended, nonetheless, Plaintiffs' allegations do not carry the day. Plaintiffs do not allege any conduct as egregious as the conduct at issue in *Rochinsky* or the examples given therein. Ice is a danger inherent to snowstorms and their aftermath, not one created by Defendant's activities. Indeed, other courts have found that snow melting, running onto an adjacent pedestrian traffic area, and refreezing is precisely "the type of activity that the *Miehl* Court specifically intended to immunize." *Lathers*, 308 N.J. Super. at 304; *accord, e.g. Siegel*, 2007 WL 1628141 (affirming summary judgment where plaintiff had slipped and fallen as the result of the melting and refreezing of piled-up snow); *Shallberg v. Township of West Orange*, 2009 WL 1617238 (App. Div. June 10, 2009) (affirming summary judgment where plaintiff slipped and fell on a patch of ice caused by plowed snow which melted onto a sidewalk and refroze). Furthermore, that the icy conditions were present for at least nine days does not change the outcome. *See, e.g.*, *Shallberg*, 2009 WL 1617238, *1 (affirming summary judgment granted in favor of defendant while noting that there had not been significant snowfall for sixteen days prior to plaintiff's accident). Defendant had conducted snow removal, and the snow piles were still visible to Plaintiffs. This

14

was enough to put Plaintiffs on notice that the dangers inherent to snowfall may still be present, and to indicate the need to proceed with caution.

Finally, Plaintiffs contend that because the Authority maintained a "black pavement policy," which is included as part of Defendant's mission statement in its policy manual, by which it endeavored to completely clear snow from all areas for which it was responsible, Matthews Deposition 39:19 – 40:10, the presence of the snow pile and ice which caused Ms. Stoetzel to fall was in violation of this policy. Therefore, Plaintiffs conclude that Defendant's conduct was palpably unreasonable. Notably, Plaintiffs cite no cases in support of the idea that Defendant's failure to live up to its mission statement renders such a failure palpably unreasonable and precludes immunity. In essence, Plaintiffs ask this Court to punish Defendant for aspiring to do a "perfect" job.

A somewhat analogous argument was made in *Pico v. State*, 116 N.J. 55 (1989). In *Pico*, a Wayne Township policeman had called the Department of Transportation in Newark to report icy conditions along Route 23. This message was relayed to the foreman of DOT's maintenance yard near Wayne, and the Newark DOT noted that "[the foreman] will handle" the conditions. *Id.* at 57-58. The court "reject[ed] plaintiff's argument that the State should be deprived of … immunity because of the foreman's statement that 'he would handle' the icy conditions. Although the parties disagree on the adequacy of the State's response … the State did nothing to increase the danger of the ice in its natural condition." *Id.* at 61.

Though there may have been a black pavement policy, and Defendant had altered the condition of the snow by piling it into a snow bank, there is no indication that the Authority increased the danger of the snow and ice. Melting snow and the refreezing of melted snow occur whether the snow is piled into a snow bank or left in its natural state. Furthermore, there is

nothing in the record indicating that Defendant did not achieve its desired "black pavement" at the time it first removed the snow. By Plaintiffs' account, there had been no snow removal for a period of nine days, and the icy conditions which caused Ms. Stoetzel's fall were created by the melting and refreezing of the pile of snow. It is thus possible that Defendant had indeed achieved "black pavement" at the time it conducted its snow removal activities, and only later did surface conditions deteriorate. Regardless, it appears that Defendant made an effort to clear the snow, and though this effort was ultimately insufficient to prevent Ms. Stoetzel's injury, as the *Miehl* court explained, "some cleaning of snow is better than none." *Miehl*, 53 N.J. at 54.

Thus, I find that the conditions and actions which caused Ms. Stoetzel's accident were of the type that should be reasonably expected in a snowstorm and which the *Miehl* court intended to immunize. Defendant did not act in a palpably unreasonable manner nor did it act in a way in which it incurred additional duties to Plaintiffs.

## CONCLUSION

In light of the above, I find that Defendant is immune from Plaintiffs' claims. Defendant's Motion for Summary Judgment is hereby granted.

/s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge